## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA FAIR HOUSING ACTION CENTER INC.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 20-2339** |
| **PLANTATION MANAGEMENT COMPANY LLC et al.** | **SECTION: "G"(3)** |

### ORDER AND REASONS

Before the Court are two identical Motions to Dismiss Pursuant to Rule 12(b)(6) filed by Moving Defendants Jeremy Goux and Timothy Goux's (collectively, "Moving Defendants").[1] In this litigation, Plaintiff Louisiana Fair Housing Action Center ("Plaintiff") alleges that several assisted living facilities and nursing homes in Southeast Louisiana, including one facility allegedly partially owned by Moving Defendants, have engaged in discriminatory practices against individuals who are deaf in violation of the Fair Housing Act, the Americans with Disabilities Act, and Louisiana law.[2] Having considered the motions, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motions to dismiss.

---

[1] Rec. Docs. 48, 76.

[2] Rec. Doc. 43 at 1–2. Plaintiff voluntarily dismissed its claims against Defendants under the Rehabilitation Act and under the Patient Protection and Affordable Care Act. *Id.* at 27–28.

# I. Background

## A.    *Factual Background*

On August 23, 2020, Plaintiff filed a Complaint in this Court against Moving Defendants, Commcare Corporation, Commcare Management Corporation, Lucy Garner, William Garner, Ronald A Goux, Highpoint Healthcare LLC, Metairie Operations, LLC, Notre Dame Health System, Plantation Management Co., L.L.C., St. Jude Management #2, L.L.C., Lawrence Stansberry, and Medico, LLC.[3] On March 12, 2021, Plaintiff filed an Amended Complaint.[4] In the Amended Complaint, Plaintiff alleges that Moving Defendants are owners of the Metairie Healthcare Center (the "Facility").[5] Plaintiff avers that during the course of a years-long investigation into nursing homes and assisted living facilities in Southeastern Louisiana, Plaintiff discovered that employees of the Facility engaged in acts of discrimination against individuals who are deaf.[6] Specifically, Plaintiff asserts that staff at the Facility "refused interpretive assistance notwithstanding receipt of generous federal funds that not only presume and require non-discrimination in services, but affirmatively mandate that necessary methods to enable effective communication be provided to deaf individuals."[7] According to Plaintiff, four entities have direct

---

[3] Rec. Doc. 1. Moving Defendants filed a motion to dismiss on February 9, 2021. Rec. Doc. 29. On March 11, 2021, Plaintiff filed an unopposed motion for leave to file an Amended Complaint, which this Court granted. Rec. Docs. 39, 42. Given that the Amended Complaint asserted new claims, eliminated others, and alleged additional facts, this Court denied Moving Defendants' first motion to dismiss as moot. Rec. Doc. 54.

[4] Rec. Doc. 43.

[5] *Id.* at 1–2.

[6] *Id.*

[7] *Id.*

2

ownership interests in the Facility: Ronald Goux, Jeremy Goux, Timothy Goux, and Metairie Operations, L.L.C. (the "LLC").[8]

Plaintiff is a nonprofit fair housing advocacy organization that investigates alleged or suspected discriminatory housing practices and litigates enforcement actions.[9] Plaintiff sends testers to simulate housing transactions and evaluate a provider's treatment of prospective tenants to determine if the provider is engaging in discriminatory housing practices.[10] Plaintiff states that upon learning of possible discrimination in area nursing homes and assisted living facilities, it launched an investigation and testing process which initially included sixty such homes and facilities.[11] As part of this investigation, Plaintiff explains that its testers contacted housing providers and made inquiries on behalf of a fictitious prospective deaf resident.[12]

During "Phase 2" of that investigation, Plaintiff avers that one of its testers contacted Metairie Healthcare Center.[13] According to Plaintiff, the tester asked to speak to someone in admissions and then spoke to a person identified as "Tiffany."[14] Plaintiff continues that Tiffany informed the tester that no one at the Facility was able to communicate using American Sign Language, but the Facility had a "chalk or message board" available to assist deaf residents in communicating with staff.[15] Plaintiff asserts that when the tester asked "whether the facility would

---

[8] *Id.* at 5–6.

[9] *Id.* at 3.

[10] *Id.*

[11] *Id.* at 10.

[12] *Id.*

[13] *Id.* at 11, 20.

[14] *Id.* at 20.

[15] *Id.* at 21.

be open to exploring having VRI [video remote interpreting] available" for the prospective resident, "Tiffany said she would check with her administrator and call [the tester] back."[16] Plaintiff avers that Tiffany did not contact the tester for eleven days, so the tester again contacted the Facility on August 28, 2018.[17] At that time, Plaintiff asserts Tiffany stated that the administrator would not consider incorporating VRI at the Facility.[18]

Plaintiff conducted further investigation in July 2020, referred to as "Phase 3."[19] Plaintiff asserts that during Phase 3, one of its testers again contacted the Facility on June 15, 2020, this time speaking to Daphne LeBlanc in Admissions.[20] Plaintiff explains that its tester again inquired about interpretive services at the Facility, and that Ms. Leblanc responded that the Facility "did not have an interpreter and typically used communication boards."[21] When the tester asked about the availability of VRI, Plaintiff asserts Ms. Leblanc explained "that 'usually the family provides that' and the facility would be able [to] provide it if the family pays for it."[22]

Plaintiff brings three claims against Moving Defendants: (1) a violation of the Fair Housing Act ("FHA"), (2) a violation of the Americans with Disabilities Act ("ADA"), and (3) a negligent

---

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 11.

[20] *Id.* at 21.

[21] *Id.*

[22] *Id.*

supervision and training claim under Louisiana law.[23] Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, and attorney's fees.[24]

**B.    *Procedural Background***

On March 26, 2021, Moving Defendants filed the instant motion to dismiss.[25] Plaintiff filed its opposition on April 13, 2021, and, with leave of Court, Moving Defendants filed their reply in further support of the motion on April 28, 2021.[26]

On June 1, 2021, Plaintiff moved for leave to file a Second Amended Complaint, which this Court granted.[27] In moving for leave to file the Second Amended Complaint, Plaintiff explained that the proposed amendments did not affect the allegations against Moving Defendants.[28] Additionally, Plaintiff stipulated, "to the extent permissible under the Federal Rules of Civil Procedure and governing precedent, that the proposed amended pleading does not affect or moot the pending motion[] to dismiss" and that the arguments in that motion and in opposition "apply equally to the . . . Second Amended Complaint."[29]

In response to the Second Amended Complaint, on June 17, 2021, Moving Defendants filed another motion to dismiss.[30] In the motion, Moving Defendants reassert all of the arguments

---

[23] *Id.* at 26–31.

[24] *Id.* at 32–33.

[25] Rec. Doc. 48.

[26] Rec. Docs. 57, 59, 61, 62.

[27] Rec. Docs. 68, 69.

[28] Rec. Doc. 68 at 1.

[29] *Id.* at 2.

[30] Rec. Doc. 76.

in the earlier motion to dismiss.[31] Likewise, Plaintiff filed its opposition on July 6, 2021, reasserting the arguments in its earlier opposition.[32] Given that the arguments made by each party in the motions and oppositions are identical, the Court addresses them collectively.

## II. Parties' Arguments

### A.   Moving Defendants' Arguments in Support of the Motion

Moving Defendants move the Court to dismiss Plaintiff's claims against them, arguing that the Amended Complaint fails to properly allege Moving Defendants' ownership interest, and, therefore, does not state a basis for liability.[33] In support, Moving Defendants note that the Amended Complaint alleges only that Moving Defendants are each "owners" of the Facility.[34] Moving Defendants contend that Plaintiff does not allege that Moving Defendants were personally involved in the alleged acts of discrimination.[35] Rather, Moving Defendants assert that the Amended Complaint "merely [makes] a collective allegation against all Moving Defendants that '[t]he employees of [facilities contacted by Plaintiff's testers] . . . , were agents acting on behalf of the owners, operators, and managing entities of [each facility].'"[36] Moving Defendants argue the Amended Complaint "does not . . . alleg[e] sufficient facts to show that [Moving Defendants] can be liable under [the FHA or the ADA]."[37] Specifically, Moving Defendants argue that Plaintiff's allegations do not plead with specificity the nature of Moving Defendants' ownership interest.

---

[31] *Id.*

[32] Rec. Doc. 79.

[33] Rec. Doc. 48-1 at 1, 4.

[34] *Id.* at 2–3.

[35] *Id.* at 2.

[36] *Id.*

[37] *Id.* at 3.

Moving Defendants assert that Plaintiff alleges at different points that Moving Defendants "own" the Facility and that the Facility is "owned and operated" by the LLC.[38]

Moving Defendants contend that these facts do not state a claim against them under the FHA or the ADA, because the nature of their ownership interest determines the extent to which they may be held personally liable.[39] Moving Defendants assert that Plaintiff is alleging one of four possibilities: that Moving Defendants own (1) the LLC, (2) the land on which the Facility sits, (3) the physical building used by the Facility, or (4) the entity operating the Facility.[40] Moving Defendants argue that none of these possibilities make them personally liable.[41]

First, Moving Defendants argue that if Plaintiff is alleging that Moving Defendants own the LLC, then "absent extraordinary circumstances necessary to 'pierce the corporate veil,'" well-settled law shields Moving Defendants from personal liability.[42] Second, Moving Defendants argue that if Plaintiff is alleging that Moving Defendants own the land on which the Facility sits, then Moving Defendants assert that they cannot be liable for discrimination under the FHA or the ADA because they do not own a "housing or place of public accommodation."[43]

Third, if Plaintiff alleges that Moving Defendants own the building used by the Facility, then Moving Defendants concede that "liability could possibly attach only if certain other requisites are met."[44] However, Moving Defendants assert that Plaintiff did not make sufficient

---

[38] *Id.* at 4.

[39] *Id.*

[40] *Id.*

[41] *Id.* at 4–8.

[42] *Id.*

[43] *Id.* at 5.

[44] *Id.*

factual allegations to state a claim for relief.[45] Finally, Moving Defendants argue that if Plaintiff alleges that Moving Defendants own the operating entity then it is "well-settled" that corporate officers are generally not vicariously liable for the acts of their employees.[46] Moving Defendants also specifically attack Plaintiff's ADA claim, arguing that "it is well-settled that the statute does not provide for personal liability."[47]

Moving Defendants similarly contend that Plaintiff's allegation that Facility employees were "agents acting on behalf of the owners" is inadequate.[48] Specifically, Moving Defendants assert that Plaintiff "has plead no facts to describe the 'agent' relationship, the basis or limits thereof, or any other facts regarding this 'agency.'"[49] Accordingly, Moving Defendants assert that they cannot be liable solely based on Plaintiff's allegations that they are "owners" of the non-juridical Facility at which "the employees of an LLC acted pursuant to some undefined and unexplained agency relationship."[50]

## B.    *Plaintiff's Arguments in Opposition to Moving Defendants' Motion*

In opposition, Plaintiff clarifies that the Amended Complaint alleges that Moving Defendants have a "direct ownership interest" in the Facility.[51] Plaintiff avers that its "allegation that [Moving] Defendants are direct owners of a facility at which employees acting on behalf of

---

[45] *Id.*

[46] *Id.* at 5–6 (discussing *Meyer v. Holley*, 537 U.S. 280 (2003)).

[47] *Id.* at 7–8 (citing *Cannon v. Dewberry*, No. 17-144, 2019 WL 1275340, at *4 (E.D. Tex. Mar. 19, 2019); *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999); *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001), *Shaw v. TDCJ-CID*, 540 F. Supp. 2d 834, 838 (S.D. Tex. Feb. 14, 2008)).

[48] *Id.* at 8.

[49] *Id.*

[50] *Id.*

[51] *Id.* at 3.

the owners violated the FHA is sufficient."[52] Plaintiff reasons that under Supreme Court precedent, the "owners and co-owners of a property whose agents or employees engage in discriminatory acts in violation of the FHA are vicariously liable for those acts."[53] Plaintiff further explains that its allegation of ownership suffices to give Moving Defendants "fair notice that they are alleged to be owners of a facility at which the employees, acting on behalf of the owners, violated various anti-discrimination laws."[54]

Plaintiff insists that the "detailed factual allegations" deemed imperative by Moving Defendants are not required to adequately state a claim.[55] Indeed, Plaintiff argues that uncovering such facts "is the purpose of discovery," not a requirement of pleading.[56] Plaintiff contends that the same is true regarding facts which define and explain the agency relationship between Moving Defendants and employees at the Facility.[57] Thus, Plaintiff asserts that its allegations sufficiently state a claim for Moving Defendants' liability under the FHA.[58]

Plaintiff disputes Moving Defendants' argument that the ADA cannot impose personal liability.[59] Plaintiff notes that Moving Defendants have previously conceded that several courts,

---

[52] *Id.* at 4.

[53] *Id.* (citing *Meyer v. Holley*, 537 U.S. 280 (2003); *Richards v. Bono*, No. 04-484, 2005 WL 1065141, at *7 (M.D. Fla. Apr. 26, 2005); *Terry v. Inocencio*, 2014 WL 4686570, *5 (N.D. Tex. Sept. 2, 2014); *Miller v. Towne Oaks E. Apartments*, 797 F. Supp. 557, 562 (E.D. Tex. 1992); *Short v. Bridwell*, No. 91-2280, 1992 WL 142592, at *3 (E.D. La. June 8, 1992); *Dillon v. AFBIC Dev. Corp.*, 597 F. 556, 563 (5th Cir. 1979)).

[54] *Id.* at 5.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 6.

[58] *Id.*

[59] *Id.*

including one in the Eastern District of Louisiana, "have held that personal liability may attach under the ADA."[60] Plaintiff explains that in arriving at the "sweeping proposition" that the ADA cannot impose personal liability, Moving Defendants incorrectly cited case law interpreting the wrong ADA provision.[61] Specifically, Moving Defendants' authority interprets 42 U.S.C. § 12132, which is applicable to public entities, but Plaintiff's claims are asserted under 42 U.S.C. § 12181 *et. seq.*, which applies to places of public accommodation.[62] Plaintiff contends that under the correct ADA provision, "an individual who owns the public accommodation where the discrimination occurs is subject to personal liability."[63]

Additionally, Plaintiff notes that Moving Defendants do not argue that Plaintiff could only establish personal liability under the ADA by pleading that Moving Defendants "were the persons responsible for the discriminatory policies" allegedly carried out at the Facility.[64] Plaintiff asserts that the Fifth Circuit has acknowledged that "respondeat superior is a theory used in ADA cases to impute actions of an employee-agent to the employer," and that other federal district courts have directly held that Title III imposes vicarious liability on owners for the acts of their agents.[65]

## C.   *Moving Defendants' Arguments in Further Support of the Motion*

In reply, Moving Defendants re-urge their argument that Plaintiff must set forth more facts that establish they are personally liable.[66] Moving Defendants maintain that Plaintiff's factual

---

[60] *Id.*

[61] *Id.* at 7.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.* at 7–8 (quoting *Rodriguez v. Baird's Bakery, Inc.*, 111 F.3d 893 (5th Cir. 1997) (emphasis omitted)).

[66] Rec. Doc. 62 at 1.

allegations fail to specify the nature of their ownership interest or how that interest establishes an agency relationship between Moving Defendants and employees of the Facility.[67] Moving Defendants stress the importance of Plaintiff's failure to establish exactly what the Moving Defendants are alleged to own.[68] Without those facts, Moving Defendants argue Plaintiff has not stated a claim for relief.[69]

Moving Defendants dispute the relevance of the cases cited by Plaintiff in support of its contention that property owners are liable for ensuring compliance with the FHA.[70] Moving Defendants explain that Plaintiff cited only cases that were "decided before *Meyer v. Holley*, or [which] rel[y] upon case law that pre-dates *Meyer*."[71]

Moving Defendants reiterate their argument that the nature of their ownership interest is determinative.[72] Moving Defendants aver that Plaintiff conceded that Moving Defendants are not personally liable if they own only the LLC.[73] Moving Defendants reargue that if the Plaintiff's allegations are construed to mean that Moving Defendants own the physical building used by the Facility, then more facts would be required to establish liability.[74] For example, Moving Defendants acknowledge that in *Richard v. Bono*, a "non-discriminating co-owner could

---

[67] *Id.*

[68] *Id.*

[69] *Id.* at 1–2.

[70] *Id.* at 2.

[71] *Id.*

[72] *Id.*

[73] *Id.* at 3.

[74] *Id.*

theoretically be liable" for the acts of a discriminating co-owner.[75] However, Moving Defendants attempt to distinguish that case from the present controversy. Moving Defendants assert that, in *Richard*, the court found that the complaint "sufficiently alleged that the discriminating co-owner was acting as an agent of the other owner."[76] But here, Moving Defendants maintain that Plaintiff did not plead facts establishing any legal or agency relationship.[77]

Similarly, Moving Defendants contend that Plaintiff's other cited cases are inapplicable because they all rely either on principles of agency or of respondeat superior to impose liability upon an owner for FHA violations.[78] Here, though, Moving Defendants argue that no facts in the Amended Complaint establish that Moving Defendants directly employed or had an agency/principal relationship with the individuals who allegedly engaged in discriminatory behavior.[79]

Additionally, Moving Defendants claim that the paragraph Plaintiff added in the Amended Complaint is a "shotgun" pleading which does not distinguish between the actions taken by individual defendants.[80] Moving Defendants assert that "shotgun pleadings" are always insufficient to state a claim against any individual defendant because they fail to provide defendants with sufficient notice to file an answer.[81] Moving Defendants contend that this

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] *Id.* at 3–4.

[80] *Id.* at 4.

[81] *Id.*

allegation should fail because it "simply lodges legal conclusions with no factual support."[82] Therefore, Moving Defendants conclude that, at most, Plaintiff has pled facts "merely consistent with liability," and such pleadings lack the factual specificity required to survive a motion to dismiss.[83]

Next, Moving Defendants argue that Plaintiff's ADA claim fails for the same reasons discussed above.[84] Moving Defendants note that in support of the ADA claim, Plaintiff only cited cases which support individual liability for "the person responsible for making the discriminatory decision on behalf of the employer corporation."[85] Moving Defendants argue, however, that not all owners are necessarily involved in making such discriminatory decisions.[86] Thus, Moving Defendants assert that an ownership interest alone is insufficient to establish individual liability under the ADA.[87] Moreover, Moving Defendants aver that Plaintiff did not plead facts indicating that Moving Defendants were responsible for making the allegedly discriminatory decisions at issue.[88] Accordingly, Moving Defendants move the court to dismiss Plaintiff's claims.[89]

---

[82] *Id.*

[83] *Id.* at 5.

[84] *Id.* at 6.

[85] *Id.* at 7. (citing *United States v. Morvant*, 843 F. Supp. 1092, 1094 (E.D. La. 1994) (Carr, J.)).

[86] *Id.* at 6. (citing *Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211 (E.D.N.Y. 1999)).

[87] *Id.* at 7.

[88] *Id.*

[89] *Id.*

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[90] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[91] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[92] "Factual allegations must be enough to raise a right to relief above the speculative level."[93] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[94]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[95] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[96] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[97] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[98] The complaint need not contain detailed factual allegations, but it

---

[90] Fed. R. Civ. P. 12(b)(6).

[91] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[92] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[93] *Twombly*, 550 U.S. at 556.

[94] *Id.* at 570.

[95] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[96] *Iqbal*, 556 U.S. at 677–78.

[97] *Id.* at 679.

[98] *Id.* at 678.

must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[99] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[100] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[101] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[102]

## IV. Analysis

Moving Defendants argue that the Amended Complaint includes no specific facts establishing a legal relationship between Moving Defendants and the Facility employees who allegedly violated the FHA, ADA, and Louisiana law by engaging in discriminatory behavior.[103] Plaintiff opposes, insisting that Moving Defendants' alleged co-ownership of the Facility is sufficient, standing alone, to state a claim against Moving Defendants for housing discrimination.[104] The Court addresses each claim in turn.

### A.    *Whether Plaintiff Has Stated a Claim Under the FHA*

The FHA broadly bans housing discrimination based on disability, including any "refusal to make reasonable accommodations . . . [which] may be necessary to afford [a] protected person

---

[99] *Id.*

[100] *Id.*

[101] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[102] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[103] Rec. Doc. 48.

[104] Rec. Doc. 57.

equal opportunity to enjoy a dwelling."[105] Under the FHA, a "dwelling" is defined as "any building . . . which is occupied as . . . a residence."[106] In *Meyer v. Holley*, the United States Supreme Court clarified that violations of the FHA result in tort liability, and thus the traditional theories of tort liability, including a principal's liability for wrongful acts of his agents, apply to violations of the FHA.[107] Here, Plaintiff alleges that Moving Defendants partially own the Facility,[108] that the Facility provides residential care,[109] that employees of the Facility refused to make reasonable accommodations for prospective deaf residents,[110] and that the employees were acting as the Moving Defendants' agents in so refusing.[111]

In resolving a motion to dismiss, the Court must accept these factual allegations as true and draw all reasonable inferences in favor of the Plaintiff. Under this standard, the Court is persuaded that Plaintiff's allegations are sufficient to place Moving Defendants on notice of, and allow Moving Defendants to understand, the nature of the claims against them.[112] These factual allegations may be sparse, but at the pleading stage, detailed factual allegations are not required. Rather, as the Supreme Court explained in *Bell Atlantic Corp. v. Twombly*, the complaint need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[113]

---

[105] 42 U.S.C. § 3604(f)(3)(B).

[106] *Id.* § 3602(b).

[107] *Meyer*, 537 U.S. at 282, 286.

[108] Rec. Doc 43 at 6.

[109] *Id.*

[110] *Id.* at 20–21.

[111] *Id.* at 12.

[112] Rec. Doc. 62.

[113] *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although this standard requires "more than labels and conclusions,"[114] it does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."[115] Instead, this standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [liability]."[116] Here, the allegations in the Amended Complaint place Moving Defendants on notice of the nature of the claims against them so that additional facts of ownership can be developed during discovery.

**B.      *Whether Plaintiff Has Stated a Claim Under the ADA***

Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."[117] Pursuant to that purpose, the ADA prohibits discrimination against individuals with disabilities by those who own, lease, or operate places of public accommodation.[118] Public accommodations include the "professional office of a healthcare provider, hospital[s], or other service establishment[s]."[119] The ADA defines "discrimination" to include denying individuals or entities "equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities . . . because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."[120] Thus, "[t]he question of whether a person is a proper defendant under the ADA turns . . . on whether . . . the defendant owns, leases, or operates a place of public

---

[114] *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

[115] *Id.* at 570.

[116] *Id.* at 556.

[117] 42 U.S.C. § 12101(b).

[118] *Id.* § 12182.

[119] *Id.* § 12181(7)(F).

[120] *Id.* § 12181(b)(1)(E).

accommodation."[121] Although courts are more often asked to determine if a particular defendant *operated* a place of public accommodation,[122] defendants who own or lease public accommodations may also be held liable for discrimination.[123] Further, the United States Court of Appeals for the Fifth Circuit has explained that defendants may be held vicariously liable for actions of their agents in ADA discrimination cases.[124]

Under these standards, Plaintiff's factual allegations are sufficient to state a claim for relief. Plaintiff alleges that Moving Defendants own the Facility, which Plaintiff alleges is a place of public accommodation.[125] Plaintiff also alleges that Facility employees engaged in discriminatory behavior by refusing to offer adequate interpretive services to prospective residents on the basis of a known disability.[126] Finally, Plaintiff asserts that the employees acted as agents of the Facility owners when they refused those services.[127]

As explained above, detailed factual allegations are not required to state a claim for relief. Instead, a complaint must state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [liability]."[128] Here, the allegations in the Amended Complaint place Moving Defendants on notice of the claims against them so that additional facts of ownership can be developed during discovery.

---

[121] *Coddington*, 45 F. Supp. 2d at 215.

[122] *See id.*

[123] *See Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1069 (5th Cir. 1995).

[124] *Rodriguez v. Baird's Bakery, Inc.*, 111 F.3d 893 (5th Cir. 1997).

[125] Rec. Doc. 43 at 6, 30.

[126] *Id.* at 20–21, 30.

[127] *Id.* at 12.

[128] *Twombly*, 550 U.S. at 556.

### C.      *Whether Plaintiff Has Stated a Claim Under Louisiana Law*

Under Louisiana law, "[n]egligent hiring and supervision is recognized as a cognizable tort."[129] The tort is governed by Louisiana Civil Code article 2315 and "[t]he standard duty-risk analysis used in all negligence cases."[130] This requires a court to "decide that there was a duty, a breach of the duty, the substandard conduct was a substantial factor or the cause-in-fact of the harm, and the substandard conduct is the legal cause."[131] Here, Plaintiffs have alleged that Moving Defendants are owners of the Facility,[132] that the Facility is a covered dwelling under the FHA,[133] that Moving Defendants have an agency relationship with the Facility's employees,[134] that those employees failed to afford reasonable accommodations to the Facility's residents,[135] and that failure denied the residents "equal opportunity to enjoy a dwelling."[136] For the reasons explained above, the Court finds that these factual allegations are sufficient to state a claim for relief because they put Moving Defendants on notice of the claims against them.

Finally, Moving Defendants' argument that the Amended Complaint is a classic example of a "shotgun pleading" is not persuasive. "A shotgun pleading is a complaint that violates either

---

[129] *Matthews v. United Fire & Cas. Ins. Co.*, 2016-0389, p. 5 (La. App. 4 Cir. 3/8/17); 213 So. 3d 502, 506.

[130] *Harrington v. La. State Bd. of Elementary & Secondary Educ.*, 97-1670, p. 8 (La. App. 4 Cir. 5/20/98); 714 So. 2d 845, 850.

[131] *Id.*

[132] Rec. Doc. 43 at 5–6.

[133] *Id.* at 6.

[134] *Id.* at 12.

[135] *Id.* at 26–28; 30–31.

[136] *See* 42 U.S.C. § 3604(f)(3)(B).

Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both."[137] Such pleadings are prohibited because they represent an attempt by the plaintiff to confuse the adverse party and the court in order to mask inappropriate theories of relief.[138] In support of this argument, Moving Defendants cite to *Magluta v. Samples*,[139] but the complaint in that case is distinguishable from the Amended Complaint here. In *Magluta*, the complaint was fifty-eight pages long, named fourteen defendants, and charged all defendants in each count.[140] Further, each count incorporated all factual allegations contained within 146 numbered paragraphs, and each count also incorporated all prior counts, resulting in a confusing jumble of irrelevant factual allegations in each count.[141] Finding that "the toleration of complaints such as [the one described] 'does great disservice to the administration of civil justice,'" the United States Court of Appeals for the Eleventh Circuit remanded the case with an order to require repleading of all claims.[142]

There are similarities here, as the Amended Complaint names "all defendants" in the disputed counts and incorporating dozens of numbered paragraphs into each count. The Amended Complaint is distinguishable, though, because the numbered paragraphs which are incorporated are clearly grouped into sections setting forth the allegations relevant to each defendant. Plaintiff lays out its claims in a manner that introduces no ambiguity, masks no theories for recovery, and avoids lengthy and unnecessary duplication of allegations for each individual defendant accused

---

[137] *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

[138] *Id.*

[139] Rec. Doc. 62 at 4 (citing *Magluta v. Samples*, 256 F.3d 1282 (11th Cir. 2001)).

[140] *Magluta*, 256 F.3d at 1284.

[141] *Id.*

[142] *Id.*

of similar behavior. Thus, the Court does not find the Amended Complaint to be an impermissible shotgun pleading.

### IV. Conclusion

Accordingly, for the reasons discussed above, **IT IS HEREBY ORDERED** that Moving Defendants Jeremy Goux and Timothy Goux's Motions to Dismiss Pursuant to Rule 12(b)(6)[143] are **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 24th  day of January, 2022.

_Nannette Jolivette Brown_
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT JUDGE**

---

[143] Rec. Docs. 48, 76.