## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA FAIR HOUSING ACTION CENTER INC.** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 20-2339** |
| **PLANTATION MANAGEMENT COMPANY LLC et al.** | **SECTION: "G"(3)** |

## <u>ORDER AND REASONS</u>

Before the Court is Moving Defendants St. Jude Management #2, LLC and Lawrence Stansberry (collectively, "Movants") "12(b)(6) Motion to Dismiss for Failure to State a Claim and, in the Alternative, 12(e) Motion for More Definite Statement."[1] In this litigation, Plaintiff Louisiana Fair Housing Action Center ("Plaintiff") alleges that several assisted living facilities and nursing homes in Southeast Louisiana, including one facility allegedly owned, operated, and managed by Movants, have engaged in discriminatory practices against individuals who are deaf.[2] Plaintiff asserts claims against Movants for violations of the Fair Housing Act ("FHA"), the Rehabilitation Act, the Patent Protection and Affordable Care Act ("ACA") the Americans with Disabilities Act ("ADA"), and Louisiana law.[3] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court denies the motion.

---

[1] Rec. Doc. 92.

[2] Rec. Doc. 70.

[3] *Id.*

1

## I. Background

### A.    Factual Background

On August 23, 2020, Plaintiff filed a Complaint in this Court against Movants, Commcare Corporation, Commcare Management Corp., Lucy Garner, William Garner, Ronald A Goux, Jeremy Goux, Timothy Goux, Highpoint Healthcare LLC, Metairie Operations, LLC, Notre Dame Health System, Plantation Management Co., LLC, and Medico, LLC.[4] With leave of Court, Plaintiff filed an Amended Complaint on March 12, 2021,[5] and a Second Amended Complaint on June 2, 2021.[6]

In the Second Amended Complaint, Plaintiff alleges that Movants are owners, operators, or "an individual with operational or managerial control" of St. Luke's Living Center (the "Facility").[7] Plaintiff avers that during the course of a years-long investigation into nursing homes and assisted living facilities in Southeastern Louisiana, Plaintiff discovered that employees of the Facility engaged in acts of discrimination against individuals who are deaf.[8] Specifically, Plaintiff asserts that staff at the Facility "refused interpretive assistance notwithstanding receipt of generous federal funds that not only presume and require non-discrimination in services, but affirmatively mandate that necessary methods to enable effective communication be provided to deaf individuals."[9] According to Plaintiff, four entities have direct ownership interests in the Facility:

---

[4] Rec. Doc. 1.

[5] Rec. Doc. 43.

[6] Rec. Doc. 70.

[7] *Id.* at 6.

[8] *Id.* at 10–12.

[9] *Id.* at 2.

Lawrence Stansberry ("Stansberry"), Lucy Garner, William Garner, and St. Jude Management #2, LLC ("St. Jude").[10]

Plaintiff is a nonprofit fair housing advocacy organization that investigates alleged or suspected discriminatory housing practices and litigates enforcement actions.[11] Plaintiff sends testers to simulate housing transactions and evaluate a provider's treatment of prospective tenants to determine if the provider is engaging in discriminatory housing practices.[12] Plaintiff states that upon learning of possible discrimination in area nursing homes and assisted living facilities, it launched an investigation and testing process which initially included sixty such homes and facilities.[13] As part of this investigation, Plaintiff explains that its testers contacted housing providers and made inquiries on behalf of a fictitious prospective deaf resident.[14]

Plaintiff conducted the investigation in three phases.[15] Plaintiff avers that during "Phase 1" of the investigation, one of Plaintiff's testers contacted the Facility to inquire about long-term placement for a prospective deaf resident who could communicate only through American Sign Language ("ASL").[16] Plaintiff asserts that the Facility employee with whom the tester spoke indicated that the Facility "'would be unable to meet [a deaf resident's] needs because we have no one on staff to interpret what she is saying.'"[17] Plaintiff further alleges that when the tester asked

---

[10] *Id.* at 6–7.

[11] *Id.* at 3.

[12] *Id.*

[13] *Id.* at 10.

[14] *Id.*

[15] *Id.* at 10–12.

[16] *Id.* at 22.

[17] *Id.*

if the Facility would "make an exception, such as hiring a certified interpreter," the Facility employee suggested a different facility and reiterated that the Facility could not offer interpretive services for deaf residents.[18]

During "Phase 2" of the investigation, Plaintiff avers that one of its testers again contacted the Facility.[19] According to Plaintiff, the tester asked "Janis in the Admissions Department" what accommodations the Facility offered for deaf residents.[20] Plaintiff asserts that Janis informed the tester that the Facility could provide a deaf resident with a white board to facilitate communication, but that no VRI services would be made available.[21] Janis allegedly explained that VRI would be difficult to implement because the staff were "unfamiliar" with it and the Facility "did not have internet at the nursing stations."[22]

Plaintiff conducted further investigation in July 2020, referred to as "Phase 3."[23] Plaintiff asserts that during Phase 3, one of its testers again contacted the Facility on June 18, 2020, this time speaking to "Kelly in the Admissions Department."[24] Plaintiffs alleges that Kelly told the tester that the Facility had "no specific programs for deaf residents and no one on staff that speaks sign language."[25] Plaintiff explains that when the tester inquired about VRI, Kelly offered to

---

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at 23.

[22] *Id.*

[23] *Id.* at 11.

[24] *Id.* at 23.

[25] *Id.*

contact the Facility's Chief Operating Officer to ask whether the Facility could offer the service.[26] The following day, Kelly allegedly left a voicemail with the tester explaining that the Facility "wouldn't be able [to] purchase the interpreter service," but if the prospective deaf resident were to bring her own equipment to the Facility and pay for the VRI service, then the Facility "would be able to set it up with their internet service provider."[27]

Plaintiff brings five claims against Movants: (1) a violation of the FHA, (2) a violation of the Rehabilitation Act, (3) violations of Section 1557 of the ACA, (4) a violation of the ADA, and (5) a negligent supervision and training claim under Louisiana law.[28] Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, and attorney's fees.[29]

## II. Parties' Arguments

### A.   Movants' Arguments in Support of the Motion to Dismiss

Movants seek dismissal of Plaintiff's claims, arguing that Plaintiff lacks standing and that Plaintiff fails to plead facts upon which relief could be granted.[30]

Movants argue that Plaintiff lacks standing.[31] Movants contend that Plaintiff is not an "aggrieved person" under the Rehabilitation Act, the ACA, the ADA, or Louisiana law because it is not a prospective resident or a current disabled resident who has been subjected to discriminatory behavior on the basis of a known disability.[32] Although Movants acknowledge that the FHA

---

[26] *Id.* at 24.

[27] *Id.*

[28] *Id.* at 26–31.

[29] *Id.* at 32–33.

[30] Rec. Doc. 92 at 1–2.

[31] Rec. Doc. 92-1 at 4.

[32] *Id.* at 4.

extends standing to "testers," they aver that the testers referenced in Plaintiff's Second Amended Complaint are not parties to this litigation.[33] Movants contend that the FHA extends standing to a person "who (1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur."[34] Movants conclude that "[t]here is simply no such plaintiff in this litigation."[35]

Next, Movants challenge the sufficiency of the allegations included in the Second Amended Complaint for four reasons.[36] First, Movants argue that the Second Amended Complaint does not clarify its allegations against Movants.[37] Movants assert that the allegations still fail to demonstrate how they have violated any laws.[38] Second, Movants argue that the allegations do not "adequately describe [the] relationship" between the Facility and Movants.[39] Relatedly, Movants aver that the allegation that the Facility receives federal assistance to engage in a health program fails to mention Stansberry.[40] Third, Movants contend that Plaintiff's testing allegations do not allege claims against Movants.[41]   Rather, Moving Defendants assert that the description of Plaintiff's testing "consists of factual allegations . . . [containing] vague and ambiguous statements

---

[33] *Id.*

[34] *Id.* at 5 (quoting 42 U.S.C. § 3602(i)).

[35] *Id.*

[36] *Id.*

[37] *Id.* at 6.

[38] *Id.*

[39] *Id.* at 7.

[40] *Id.*

[41] *Id.*

which do not require a response from" Movants.[42] Fourth, Movants argue that Plaintiff does not identify the injury that Movants allegedly caused.[43] Movants contend that Plaintiff's allegation that it suffered an injury is a legal conclusion couched as fact, and as such, the Court may not accept it as true for the purposes of a motion to dismiss.[44]

In the alternative, Movants move for a more definite statement.[45] Movants reiterate that Plaintiff has not specifically described how they violated any federal law and did "not allege how [Movants] were negligent in training any employees."[46] Thus, Movants conclude that the Second Amended Complaint fails to place them on notice of the charges against them, and they are unable to respond to such vague allegations.[47]

**B.    *Plaintiff's Arguments in Opposition to the Motion to Dismiss***

In opposition, Plaintiff argues that it is settled law that organizations have standing to bring discrimination claims.[48] Plaintiff asserts that to establish organizational standing it must plead that a "defendant's actions frustrate the organization's mission[] and force[s] the organization to 'divert significant resources to counteract the defendant's conduct.'"[49] Plaintiff avers that it "suffered precisely this type of injury" and "pled so in its Second Amended Complaint."[50]

---

[42] *Id.* at 7–8.

[43] *Id.* at 8.

[44] *Id.*

[45] *Id.* at 9–10.

[46] *Id.* at 10.

[47] *Id.* at 10–11.

[48] Rec. Doc. 100.

[49] *Id.* at 6 (quoting *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 612 (5th Cir. 2017)).

[50] *Id.* at 7.

Plaintiff further argues that it has sufficiently pled its claims against Movants.[51] As to its FHA claims, Plaintiff explains that the Second Amended Complaint alleges that Movants are owners and operators of the Facility, and that the Facility's employees were agents acting on behalf of the owners and operators.[52] Plaintiff contends that it has stated a claim under the FHA because, under the FHA, Movants are liable for the actions of their agents under "traditional theories of tort liability."[53] Further, Plaintiff asserts that it pled that Movants owned, operated, or had managerial control of the Facility; that the Facility is a dwelling under the FHA; and that the Facility "refused to make reasonable accommodations to prospective deaf residents."[54] Plaintiff argues these allegations are "sufficient to adequately plead vicarious liability" of Movants.[55]

Next, Plaintiff contends that it has stated a claim under the Rehabilitation Act and the ACA.[56] Plaintiff avers that, to state a claim under these statutes, it must allege (1) a qualifying disability, (2) eligibility for a program, (3) denial of benefits in that program by reason of that disability, and (4) the program receives federal financial assistance.[57] Plaintiff asserts that it adequately alleged that its testers requested accommodations for prospective deaf residents, that those prospective residents are otherwise qualified to reside at the Facility, that the Facility failed

---

[51] *Id.* at 7–8.

[52] *Id.* at 8.

[53] *Id.* at 8–9 (citing *Meyer v. Holley*, 537 U.S. 280 (2003)).

[54] *Id.* at 9.

[55] *Id.*

[56] *Id.*

[57] *Id.* at 9–10 (citing 29 U.S.C. § 764(a)) (quoting *Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 378 (5th Cir. 2021)) ("For disability-discrimination claims, the ACA incorporates the substantive analytical framework of the [Rehabilitation Act].").

to provide benefits on the basis of that disability, and that the Facility receives federal financial assistance.[58]

Plaintiff also argues it has stated a claim under the ADA.[59] Plaintiff asserts that Rehabilitation Act claims and ADA claims are analyzed under the same standard.[60] Thus, Plaintiff contends that, for the same reasons stated above, "because of [Movants]' ownership, management, or operation of [the Facility], [Movants] may be liable for the discriminatory conduct of [their] employees."[61] Further, Plaintiff argues that it has stated a claim for negligent hiring and supervision under Louisiana law.[62] Plaintiff asserts that, to state such a claim, it must show "a duty, a breach of the duty, the substandard conduct was a substantial factor or the cause-in-fact of the harm, and the substandard conduct is the legal cause."[63] Plaintiff contends that it has alleged Movants owner, manage, or operate the facility, that they had a duty to afford handicapped persons equal opportunity to use the Facility, and that Movants breached that duty by failing to provide interpreter services, causing Plaintiff to diver its resources to investigate the alleged discrimination.[64]

Finally, Plaintiff argues that the Second Amended Complaint meets the pleading requirements under Federal Rule of Civil Procedure 8, and thus Movants' Motion for a More

---

[58] *Id.* at 10.

[59] *Id.*

[60] *Id.* (citing *Harrison v. Klein Indep. Sch. Dist.*, 856 Fed. App'x 480, 482 (5th Cir. 2021)).

[61] *Id.* at 11.

[62] *Id.*

[63] *Id.* (quoting *Matthews v. United Fire & Cas. Ins. Co.*, 2016-0389, p. 5 (La. App. 4 Cir. 3/8/17); 213 So. 3d 502, 506).

[64] *Id.* at 11–12.

Definite Statement should be denied.[65] Plaintiff argues the Second Amended Complaint places Movants on adequate notice of the claims against them sufficient to "reasonably prepare a responsive pleading."[66]

### III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[67] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[68] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[69] "Factual allegations must be enough to raise a right to relief above the speculative level."[70] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[71]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[72] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[73] "While legal conclusions

---

[65] *Id.* at 12.

[66] *Id.*

[67] Fed. R. Civ. P. 12(b)(6).

[68] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[69] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[70] *Twombly*, 550 U.S. at 556.

[71] *Id.* at 570.

[72] *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[73] *Iqbal*, 556 U.S. at 677–78.

can provide the framework of a complaint, they must be supported by factual allegations."[74] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[75] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[76] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[77] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[78] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[79]

## IV. Analysis

Movants argue that the Second Amended Complaint should be dismissed because Plaintiff lacks standing, and because Plaintiff fails to state a claim upon which relief can be granted under the FHA, the Rehabilitation Act, the ACA, the ADA, and Louisiana law.[80] Plaintiff opposes,

---

[74] *Id.* at 679.

[75] *Id.* at 678.

[76] *Id.*

[77] *Id.*

[78] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[79] *Carbe v. Lappin*, 492 F.3d 325, 328 n.9 (5th Cir. 2007); *Moore v. Metro. Hum. Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)).

[80] Rec. Doc. 92.

arguing that it has organizational standing, and that it has adequately pled facts to state a claim against Movants for housing discrimination.[81] The Court addresses each claim in turn.

### A.    *Whether Plaintiff Has Standing*

Standing implicates the Court's jurisdiction and must be addressed before determining whether Plaintiff has adequately stated claims against Movants.[82] A plaintiff, whether an individual or an organization,[83] must meet three requirements to have standing under Article III: (1) the plaintiff has suffered an "injury in fact" which is both "concrete and particularized" and "actual or imminent," (2) there is a causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[84] In other words, "[a] plaintiff must have suffered 'a distinct and palpable injury to himself . . . that is likely to be redressed if the requested relief is granted."[85] Finally, "a plaintiff may state a cause of action only when the interests in the litigation fall within the zone of interests protected by the law invoked."[86] When a plaintiff is in an organization, it can establish the "injury in fact" requirement by alleging that its "ability to pursue its mission is 'perceptibly impaired' because it has 'diverted significant resources to counteract the defendant's conduct."[87]

---

[81] Rec. Doc. 100.

[82] *See Steel Co. v. Citzens for a Better Env't*, 523 U.S. 83, 93–102; *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[83] *N.A.A.C.P. v. City of Kyle*, 626 F.3d 233, 237 (5th Cir. 2010).

[84] *Tenth Street St. Residential Ass'n v. City of Dall.*, 968 F.3d 492, 499 (5th Cir. 2020).

[85] *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (internal citations omitted).

[86] *Id.* (quoting *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1303 (2017) (internal punctuation omitted)).

[87] *Id.* at 500. (citing *N.A.A.C.P. v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010)).

Here, the Court finds that Plaintiff's allegations are sufficient to establish standing. First, Plaintiff has alleged that it initiated testing of nursing homes and assisted living centers after learning that "housing discrimination against deaf individuals in [such facilities] . . . may be occurring in Louisiana."[88] Plaintiff further alleged that in order to "identify[] and counteract[] the effects of [Movants'] discrimination," it diverted significant resources from its other organizational programs and activities.[89] Plaintiff specifically identified several other planned organizational activities from which it diverted resources in order to counteract Movants' alleged discriminatory practices, including "fair housing landlord trainings, [Plaintiff's] annual fair housing conference, Fair Housing Month events and event planning, fundraising campaigns, promotional work regarding [Plaintiff's] 'Fair Housing Five' children's book, and other projects and activities."[90] Plaintiff alleged that Movants' actions have impeded its efforts to pursue its mission of ensuring equal housing opportunity in Louisiana.

Accepting Plaintiff's allegations as true, as the Court must at this stage, the Court finds that Plaintiff's allegations establish an injury in fact. That injury is fairly attributable to Movants' alleged discriminatory practices because Plaintiff undertook the testing which required diversion of critical resources only after Plaintiff learned that such discrimination may be occurring at Louisiana nursing homes and assisted living facilities. To address this injury, Plaintiff requests declaratory and injunctive relief, as well as compensatory and punitive damages. Those remedies, if granted, are likely to redress Plaintiff's injury.[91] Additionally, the FHA, ADA, ACA, and

---

[88] Rec. Doc. 70 at 10.

[89] *Id.* at 25.

[90] *Id.* at 26.

[91] *See Gladstone Realtors*, 441 U.S. at 100.

Rehabiltation Act all afford protections to individuals facing disability discrimination. Therefore, Plaintiff's injury falls within the "zone of interests" of these statutes. [92] Thus, the Court finds that Plaintiff has standing to bring this action.

**B.      *Whether Plaintiff Has Stated a Claim Under the FHA***

The FHA's broad ban on disability discrimination in housing extends to any "refusal to make reasonable accommodations . . . [which] may be necessary to afford [a] protected person equal opportunity to enjoy a dwelling."[93] A "dwelling" is "any building . . . which is occupied as . . . a residence."[94] Traditional theories of tort liability, including a principal's liability for wrongful acts of his agents, apply to violations of the FHA.[95] Here, the Court finds that the Second Amended Complaint adequately states a claim against Movants under the FHA. Plaintiff alleges that the Facility is a dwelling as defined by the FHA.[96] Plaintiff avers that St. Jude is an owner or operator of the Facility,[97] and that Stansberry is an owner with operational or managerial control of the Facility.[98] Plaintiff alleges that the Facility provides residential care[99] and that employees at the Facility refused to make reasonable accommodations for prospective deaf residents.[100] Plaintiff

---

[92] *Id*. (quoting *Bank of Am. Corp.*, 137 S. Ct. at 1303).

[93] *Id.* § 3604(f)(3)(B).

[94] *Id.* § 3602(b).

[95] *Meyer*, 537 U.S. at 282, 286.

[96] Rec. Doc. 70 at 6–7.

[97] *Id.* at 6.

[98] *Id.*

[99] *Id.*

[100] *Id.* at 21–24.

further alleges that those employees acted as Movants' agents in so refusing.[101] These allegations sufficiently state a claim upon which relief may be granted. Therefore, the Court denies the Motion as to Plaintiff's FHA claim.

**C.      Whether Plaintiff Has Stated a Claim Under the Rehabilitation Act or the ACA**

The Rehabilitation Act protects individuals from discrimination in the administration of federal programs on the basis of disability: "No otherwise qualified individual with a disability in the United States, . . . shall, solely by reason of her or his disability, . . .  be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."[102] To state a claim under the Rehabilitation Act, a plaintiff must allege that (1) they have a qualifying disability, (2) they are otherwise qualified for participation in the program, (3) they are being denied the benefits of the program solely by reason of their disability, and (4) the program receives federal financial assistance.[103] The statute expressly lists deafness as a disability.[104]

Additionally, the ACA provides that "an individual shall not, on the ground prohibited under . . . [the Rehabilitation Act], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."[105] The Fifth Circuit has explained that "[f]or disability-discrimination claims, the ACA incorporates the substantive analytical framework of the

---

[101] *Id.* at 12.

[102] 29 U.S.C. § 794(a).

[103] *See Spann ex rel. Hopkins v. Word of Faith Christian Ctr. Church*, 589 F. Supp. 2d 759, 764 (S.D. Miss. 2008).

[104] 29 U.S.C. § 705(21).

[105] 42 U.S.C. § 18116(a) (citing 29 U.S.C. § 794).

[Rehabilitation Act]."[106] Accordingly, because the standards are the same, the Court analyzes these claims together.

Here, the Court finds that Plaintiff has stated a claim under the Rehabilitation Act and the ACA. In the Second Amended Complaint, Plaintiff alleges that its testers requested accommodations for prospective deaf residents who are otherwise qualified to reside at the Facility.[107] Plaintiff also alleges that the Facility "received substantial Federal financial assistance."[108] According to Plaintiff, the Facility employees failed to provide benefits to the prospective residents on the basis of a qualifying disability.[109] Specifically, Plaintiff alleges that Movants' "ongoing policy or practice . . . to deny the use of qualified ASL interpreters via VRI" deprives prospective deaf residents of "meaningful access to the services, programs, and benefits the [Movants] offer to other individuals."[110] These allegations meet the requirements for disability discrimination under both the Rehabilitation Act and ACA. Therefore, the Court denies the Motion as to these claims.

### D.    *Whether Plaintiff Has Stated a Claim Under the ADA*

Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."[111] Pursuant to that purpose, the ADA prohibits discrimination against individuals with disabilities by those who own, lease, or

---

[106] *Francois v. Our Lady of the Lake Hosp., Inc.*, 8 F.4th 370, 378 (5th Cir. 2021).

[107] Rec. Doc. 70 at 21–24.

[108] *Id.* at 9.

[109] *Id.* at 28–29.

[110] *Id.* at 28.

[111] 42 U.S.C. § 12101(b).

operate places of public accommodation.[112] Public accommodations include the "professional office[s] of a healthcare provider, hospital[s], or other service establishment[s]."[113] The ADA defines "discrimination" to include denying individuals or entities "equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities . . . because of the known disability of an individual with whom the individual or entity is known to have a relationship or association."[114] Thus, "[t]he question of whether a person is a proper defendant under the ADA turns . . . on whether . . . the defendant owns, leases, or operates a place of public accommodation."[115] Although courts are more often asked to determine if a particular defendant *operated* a place of public accommodation,[116] defendants who own or lease public accommodations may also be held liable for discrimination.[117] Further, the United States Court of Appeals for the Fifth Circuit has explained that a defendant may be held vicariously liable for the actions of its agents in ADA discrimination cases.[118]

  Under these standards, the Court finds that Plaintiff's factual allegations are sufficient to state a claim for relief under the ADA. Plaintiff alleges that Movants own, operate, or manage the Facility, which Plaintiff alleges is a place of public accommodation.[119] Plaintiff also alleges that employees at the Facility engaged in discriminatory behavior by refusing to offer adequate

---

[112] *Id.* § 12182.

[113] *Id.* § 12181(7)(F).

[114] *Id.* § 12181(b)(1)(E).

[115] *Coddington*, 45 F. Supp. 2d at 215.

[116] *See id.*

[117] *See Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1069 (5th Cir. 1995).

[118] *Rodriguez v. Baird's Bakery, Inc.*, 111 F.3d 893 (5th Cir. 1997).

[119] Rec. Doc. 70 at 6–7, 30.

interpretive services to prospective residents on the basis of a known disability.[120] Finally, Plaintiff asserts that the employees acted as agents of the Facility's owners when they refused those services.[121] Therefore, the Court denies the Motion as to Plaintiff's ADA claims.

### E.    *Whether Plaintiff Has Stated a Claim Under Louisiana Law*

Under Louisiana law, "[n]egligent hiring and supervision is recognized as a cognizable tort."[122] The tort is governed by Louisiana Civil Code article 2315 and "[t]he standard duty-risk analysis used in all negligence cases."[123] This requires a court to "decide that there was a duty, a breach of the duty, the substandard conduct was a substantial factor or the cause-in-fact of the harm, and the substandard conduct is the legal cause."[124] Here, Plaintiff has alleged that Movants are owners, managers, or operators of the Facility,[125] and that Movants had a duty to "afford handicapped persons equal opportunity" to enjoy and use their dwelling.[126] Plaintiff asserts that Movants breached that duty by failing to provide interpretive services, like VRI,[127] and that breach proximately caused injury to Plaintiff by requiring it to divert resources to investigate the alleged discrimination.[128] These factual allegations, accepted as true for purposes of this Motion to

---

[120] *Id.* at 21–24, 30.

[121] *Id.* at 12.

[122] *Matthews v. United Fire & Cas. Ins. Co.*, 2016-0389, p. 5 (La. App. 4 Cir. 3/8/17); 213 So. 3d 502, 506.

[123] *Harrington v. La. State Bd. of Elementary & Secondary Educ.*, 97-1670, p. 8 (La. App. 4 Cir. 5/20/98); 714 So. 2d 845, 850.

[124] *Id.*

[125] Rec. Doc. 70 at 6.

[126] *Id.* at 10.

[127] *Id.* at 21–24.

[128] *Id.* at 24–26.

Dismiss, satisfy the requirements of the standard duty-risk analysis used to evaluate negligent supervision claims in Louisiana, and therefore, dismissal is inappropriate at this juncture. Accordingly, Movants' Motion is denied as to the Louisiana law allegations.

### F.    *Motion for More Definite Statement Under Fed. R. Civ. P. 12(e)*

Finally, Movants request, in the alternative, for the Court to order a more definite statement, arguing that the Second Amended Complaint is "so vague and ambiguous that [Movants] have not been placed on adequate notice to . . . prepare an Answer."[129] Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief."[130] A district court has wide discretion as to whether to order a more definite statement under Rule 12(e).[131]

The Court finds that Plaintiff's Second Amended Complaint is sufficient to allow Movants to reasonably prepare a response. In the Second Amended Complaint, Plaintiff alleges that Movants discriminated against prospective deaf residents by refusing to provide interpretative services.[132] Specifically, Plaintiff asserts that Movants are owners or operators of the Facility.[133] Plaintiff provides detailed information regarding the testing process, including verbatim quotations from the interactions with staff at the Facility, setting forth the basis for its allegations of discriminatory practices.[134] Plaintiff also includes allegations that the employees at the Facility

---

[129] Rec. Doc. 92-1 at 10.

[130] Fed. R. Civ. P. 8.

[131] *Old Time Enters., Inc. v. Int'l Coffee Corp.,* 862 F.2d 1213, 1217 (5th Cir. 1989); *see also In re McWilliams*, 22 F.3d 1095 (5th Cir. 1994).

[132] *See* Rec. Doc. 70 at 7–24.

[133] *Id.* at 6–7.

[134] *Id.* at 21–24.

"were agents acting on behalf of the owners, operators, and managing entit[y]."[135] On that basis, Plaintiff alleges that Movants violated the FHA, ADA, ACA, Rehabilitation Act, and Louisiana law.[136] In other words, the Second Amended Complaint provides a short, plain statement of facts sufficient to put Movants on notice of the claims against them. Therefore, the Court finds that Plaintiff's complaint is not so "vague or ambiguous that the party cannot reasonably prepare a response."[137] Accordingly, the Court denies Movant's request for a more definite statement.

**IV. Conclusion**

Accordingly, for the reasons discussed above,

**IT IS HEREBY ORDERED** that Defendants St. Jude Management #2, LLC and Lawrence Stansberry's "12(b)(6) Motion to Dismiss for Failure to State a Claim and, in the Alternative, 12(e) Motion for More Definite Statement"[138] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this __16th__ day of May, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT JUDGE**

---

[135] *Id.* at 12.

[136] *Id.* at 26-31.

[137] Fed. R. Civ. P. 12(e).

[138] Rec. Doc. 92.