**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

LOUISIANA FAIR HOUSING
ACTION CENTER, INC.,
                              *Plaintiff*,

        v.

PLANTATION MANAGEMENT
COMPANY, LLC, et al.,

                              *Defendants*.

Civ. No. 20-2339

Section G (3)

District Judge Nannette Jolivette Brown

Magistrate Judge Dana M. Douglas

**SETTLEMENT AGREEMENT**

WHEREAS, Plaintiff Louisiana Fair Housing Action Center ("LaFHAC" or "Plaintiff")

filed a Second Amended Complaint on June 2, 2021 against St. Jude Management #2, L.L.C. and

Lawrence Stansberry (together, "Defendants");

WHEREAS, in the Second Amended Complaint, Plaintiff alleged, among other things, that

Defendants discriminated against Plaintiff on the basis of disability in violation of the Fair Housing

Act, 42 U.S.C. § 3601 *et seq*., Section 504 of the Rehabilitation Act of 1973 , 29 U.S.C. § 794;

Section 1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116; 42 U.S.C. §

18116, the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., and Louisiana law;

WHEREAS, Plaintiff and Defendants identified herein (collectively, the "Parties") wish to

amicably and finally resolve the claims raised by Plaintiff in the Second Amended Complaint,

according to the terms set forth in this Settlement Agreement ("Agreement"), as a compromise to

avoid the cost and uncertainty of litigation;

WHEREAS, Defendants have denied the allegations of wrongdoing and liability as set

forth in the Second Amended Complaint, and by entering into this Agreement do not admit that

they have engaged in any wrongdoing whatsoever as alleged in the Second Amended Complaint,

1

nor should anything in this Agreement be construed as an admission of any wrongdoing or of any matter alleged in the Second Amended Complaint; and

WHEREAS, the Parties have voluntarily agreed to the terms of this Agreement and jointly request that it be so ordered by the Court, as indicated by the signatures appearing below;

IT IS HEREBY AGREED by and between the Parties that:

## I. TERM AND SCOPE OF AGREEMENT

1.   All monetary obligations under this Agreement, unless otherwise specified, shall commence thirty (30) days after the date this Agreement is so ordered by the Court.

2.   All equitable obligations under this Agreement shall commence if and when St. Luke's Living Center (the "Facility"), previously located at 4201 Woodland Drive in New Orleans, Louisiana, resumes operation. The specific terms of the equitable relief shall apply to the policies, procedures, and operation of the Facility.

3.   If and when the Facility resumes operation, the equitable obligation shall commence from the date when the Facility is licensed to accept residents and said obligation will continue for a period of three (3) years from that date.

4.   All Parties agree to take the necessary steps to seek Court approval of this Agreement. All Parties agree that if any of the provisions stated within this Agreement are contrary to applicable law, the law will supersede. This Agreement shall be binding on the Parties and their owners, employees, agents, representatives, officers, heirs, assigns, or subsidiaries, unless otherwise specified.

**II. MONETARY RELIEF**

5.     Defendants shall pay or cause to be paid to Plaintiff and its attorneys, Eisenberg & Baum, LLP ("E&B"): (1) the total sum of Eighty Thousand and 00/100 Dollars ($80,000.00). The aforementioned monetary relief (the "Settlement Amount") is in full and final settlement of all claims in Plaintiff's Second Amended Complaint including, but not limited to, any claims for damages, attorneys' fees, or costs. The costs of all training contemplated in this Agreement are recognized to be included within the Settlement Amount as stated above. As a condition of receiving the Settlement Amount under this Agreement, Plaintiff and E&B are each required to deliver completed IRS Form W-9 to counsel for Defendants. The Settlement Amount shall be made as follows:

(a) one check made payable to "Louisiana Fair Housing Action Center, Inc." in the amount of Forty Eight Thousand Dollars ($48,000), which amount will be reported on an IRS Form 1099-MISC to be issued to Plaintiff; and

(b) one check made payable to "Eisenberg & Baum, LLP" in the amount of  Thirty Two Thousand dollars ($32,000.00), apportioned as payment for attorneys' fees, which amount will be reported on IRS Forms 1099-MISC to be issued to both Plaintiff and Plaintiff's counsel.

(c) Defendants shall deliver the payments described in Paragraph 4(a) and (b) to E&B located at 24 Union Square East, Penthouse, New York, New York 10003. Payment shall be made no later than thirty (30) days after the Court has so ordered this Settlement Agreement and filed same with the Clerk of the Court, provided that Defendants has received a completed IRS Form W-9 from Plaintiff and from E&B at least ten business days before such payment.

6.     The Parties shall file a Stipulation and Order of Dismissal with the Court to dismiss the case if and only if the Settlement Amount is fully paid at the address specified in the preceding paragraph. Concurrent with the signing of this Agreement, the Parties shall execute, and Plaintiff shall file, said Stipulation and Order of Dismissal within fifteen (15) days of Defendants' payment of the Settlement Amount on the terms set forth above. Except as provided herein, both sides shall bear their own attorneys' fees and costs.

## III. GENERAL INJUNCTIVE RELIEF

7.     The Facility and its employees shall not discriminate on the basis of disability in the admission of residents to the Facility, in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §3601 *et seq*., Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §794; Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557" or "ACA"), 42 U.S.C. §18116, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 *et seq*., and Louisiana law in any manner, including without limitation:

(a) Refusing to admit prospective residents based upon the disability of being deaf and/or hard of hearing; and

(b) Refusing to provide residents who are deaf or hard of hearing auxiliary services such as online American Sign Language ("ASL") interpreters when necessary for effective communication.

8.     The Facility agrees to implement the following changes to its policies, procedures and operations:

(a) The Facility will adopt a "Communication with Deaf or Hard of Hearing Persons Accommodation Policy," which includes provisions barring discrimination based on disability.

(b) For any deaf or hard of hearing resident identified during the comprehensive care plan process, the Facility will make a reasonable accommodation request for auxiliary services, and such request will be noted in the resident's file and the following shall occur:

4

1. The Facility's employees shall begin an interactive process to determine what auxiliary aids or services would be most appropriate, if any, and any such aids or services to be provided shall be documented in the resident's comprehensive care plan.

2. Specific auxiliary aids or services available in different levels of care will likely be different, and the availability of such services will be discussed with the resident.

3. The Facility will develop a comprehensive care plan for each resident.

4. The comprehensive care plan will address the communication needs of the resident regarding auxiliary services such as ASL.

5. The comprehensive care plan will alert the staff that the resident is deaf or hard of hearing.

6. The comprehensive care plan shall indicate the mode of communication provided to the deaf or hard of hearing resident.

7. The comprehensive care plan will be reviewed and reassessed twice a year because auxiliary aids needed to achieve effective communication may vary during the course of a resident's stay.

8. The comprehensive care plan will be reassessed during the resident's periodic treatment/service plan review.

(c)   Website Changes:

1. Include the international symbol for sign language interpretation.

2. State that the Facility provides auxiliary aids and services when necessary to deaf and/or hard of hearing resident.

3. Add statements that the Facility complies with all applicable federal, state, and local anti-discrimination laws.

(d)   The aforementioned changes shall be adopted within ninety (90) days of the Effective Date.

9.   Prior to the execution of this Agreement, Plaintiff acknowledges that it has received copies of the "Communication with Deaf or Hard of Hearing Persons Accommodation Policy" described by Paragraph 8(a) of this Agreement."

**IV. FAIR HOUSING TRAINING**

10.     Over the three (3) year period of this Agreement, the Facility will allow LaFHAC to provide materials for two (2) rounds of training to employees, subject to the following:

(a) The term "employees" includes intake and admissions personnel, and department heads supervising nursing, social services, admissions, recreation, and rehabilitation at the Facility listed in paragraph two (2) above.

(b) Each round of training shall consist of four training sessions spread across two consecutive days. The trainings shall take place virtually or at the Facility, with two trainings for each of the two days.

(c) Each training session shall not exceed one (1) hour in duration.

(d) The training will be primarily dedicated to legal issues concerning the deaf and hard of hearing but may also include sensitivity training regarding deaf and hard of hearing.

(e) The training will include comprehensive training regarding an entity's compliance with the FHA and all applicable anti-discrimination laws.

(f) LaFHAC affirms and agrees that nothing in the training materials shall contradict the Facility's standard operating procedures or the policies set forth in Paragraph 8 of this Agreement and further agrees that nothing in the training will conflict or be contrary to the laws of the State of Louisiana and that of the United States.

(g) LaFHAC will, at the time of the above-mentioned written notice, provide counsel for Defendants with sample proposed training materials for the Facility's advance review. In the event the Facility objects to any element of the training materials or believes the training is inconsistent with the policies and procedures set forth in Paragraph 8 above, the Parties shall meet and confer in an effort to agree on the training materials and/or information to be provided in the training. Any dispute that cannot be resolved following such a meet and confer will be subject to the terms and requirements of Paragraph 17 below.

(h) The Facility will, in good faith, consider the sample training materials and incorporate such materials as appropriate. The Facility will provide the final training materials to LaFHAC prior to the training.

**V. EDUCATIONAL TRAINING**

11.     In addition to the training, the Facility will ensure that all current and new staff having the roles described in Paragraph 10(a) have been instructed to read the Communication with Deaf or Hard of Hearing Persons Accommodation Policy described in Paragraph 8(a) of this Agreement and are informed that online sign language interpreters may be provided as appropriate

upon request for resident consistent with the terms of the Communication with Deaf or Hard of

Hearing Persons Accommodation Policy.

## VI. RECORDKEEPING PROVISIONS

12.     The Facility will maintain the following records throughout the term of this

Agreement electronically or in paper form:

(a) Certification that employees have been provided with the Communication with Deaf or Hard of Hearing Persons Accommodation Policy described in this Agreement, and that the training described has taken place.

(b) Records of written requests for auxiliary aids or services received from deaf or hearing-impaired residents, and documentation as to whether the request was honored, denied, or alternative aids were provided.

(c) Copies of any written complaints related to failure to provide auxiliary aids and services to residents who are deaf or hard of hearing.

(d) Copies of all written policies required by this Agreement.

(e) Supporting documentation concerning provision of auxiliary aids or services to residents (e.g., online interpreter or aid contracts, invoices, receipts, etc.).

(f) Copies of all written policies and forms related to reasonable accommodations and auxiliary aids and services for deaf and/or hearing-impaired residents.

(g) Certification of the availability of information regarding reasonable accommodations, the Facility's compliance with applicable federal, state and local law, including but not limited to the FHA, and the international symbol for sign language interpretation, posters, signs, etc.

(h) Such signage will not be construed as a finding of liability under or applicability of the above-mentioned anti-discrimination laws.

(i) All general advertisements and marketing materials distributed or made available to the public during the term of this Agreement.

13.     The records described in Paragraph 12 will be maintained in one electronic or paper

document.  The document will include records for the Facility described in Paragraph 2.  Plaintiff

may initiate a consolidated of the review records described in Paragraph 12 once annually during

the term of this Agreement.

14.     Plaintiff shall comply with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the requirements of any regulations promulgated thereunder, including, without limitation, the federal privacy standards and security standards contained in 45 C.F.R. Parts 160, 162 and 164.  Plaintiff agrees not to use or disclose protected health information or individually identifiable health information (as defined in 45 C.F.R. Part 164) (collectively, "PHI") concerning any resident of the Facility other than expressly permitted by this Agreement and/or as permitted or required by federal or state law.  Plaintiff shall indemnify, defend and hold Defendants and the Facility harmless from any claims, actions, demands and liabilities in any way related to Plaintiff's violation of HIPAA and/or the disclosure of PHI concerning any resident of the Facility.

## VII. RELEASES

In exchange for the Facility's agreement to the terms set forth in this Agreement, Plaintiff and its employees, agents, representatives, attorneys, officers, heirs, assigns, or subsidiaries, hereby release, acquit, and forever discharge with prejudice, and subject to the terms of this Agreement, St. Jude Management #2, L.L.C., St. Luke's #2, L.L.C., Lawrence E. Stansberry, III, Lucy Garner, William Garner, the Facility and all employees, owners, shareholders, agents, trustees, board members, members, managers, other constituents, insurers, including Hallmark Financial Services, Inc., bond holders, attorneys, subsidiaries and affiliated entities from any and all liability, claims, or rights of action arising from the allegations in the Second Amended Complaint (including, but not limited to, claims for costs, expenses, and attorneys' fees) and from any other liability concerning discrimination in admissions or care for prospective patients or patients who are deaf or hard of hearing.

## VIII. ADMINISTRATION OF AGREEMENT

15.     The United States District Court for the Eastern District of Louisiana shall retain jurisdiction to enforce the terms of this Agreement upon the filing of an appropriate motion by either party, provided any moving party has fully complied with the notice and cure provision herein in Paragraph 17.

16.     It shall be a condition precedent to LaFHAC's or Defendants' right to seek judicial intervention on any alleged violation of this Agreement that LaFHAC or Defendants shall first have given the other party's counsel (Lawrence, Knight & Curlin, 111 Veterans Memorial Blvd, Suite 701, Metairie, LA 70005 for Defendants, and Eisenberg & Baum, 24 Union Square East, Penthouse, New York, New York 10003 for Plaintiff), written notice stating with specificity the alleged violation and the specific facts of the alleged breach of this Agreement (the "breach"). If a period of thirty (30) days from and after the giving of such written notice elapses without the breaching party having cured or remedied such breach to the mutual reasonable satisfaction of Plaintiff and Defendants during such thirty (30) day period, the moving party will only then be allowed to pursue judicial intervention. In the case of an alleged violation that cannot be cured within thirty (30) days, the period for remedy or cure shall be extended for a reasonable time (not to exceed an additional thirty (30) days), provided the moving party has made and continues to make a diligent effort to effect such a remedy or cure. Any claim of an incurable violation must be based upon reasonableness and must be discussed by Plaintiff and Defendants in good faith before any party seeks judicial intervention.

18.     This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

9

## IX. SEVERABILITY

19.     If any provision of this Agreement is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Agreement shall endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision shall materially affect the intent of this Agreement. The Parties to this Agreement shall consult and use their reasonable best efforts to agree upon a valid and enforceable provision that shall be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

## X. MISCELLANEOUS

20.     This Agreement contains all the terms and conditions agreed upon by the Parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein.

21.     The Parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

22.     This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original. For purposes of executing this Agreement, a document signed and transmitted by facsimile or email shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**[Signature Pages Follow]**

10

**LOUISANA FAIR HOUSING
ACTION CENTER, INC.**

By:  Cashauna Hill

Dated:  8/03/2022

St. Jude Management #2, L.L.C.

By:

Dated:

Lawrence Stansberry

By:

Dated:

**SO ORDERED**

_____

11