UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LOUISIANA FAIR HOUSING ACTION CENTER, INC.** <br>     **Plaintiff** <br><br> **VERSUS** <br><br> **PLANTATION MANAGEMENT COMPANY, LLC, HIGH POINT HEALTHCARE, LLC, MEDICO, LLC, NOTRE DAME HEALTH SYSTEM, COMMCARE CORPORATION, COMMCARE MANAGEMENT CORPORATION, METAIRIE OPERATIONS, LLC, RONALD A. GOUX, JEREMY GOUX, ST. JUDE MANAGEMENT #2, LLC, LAWRENCE STANSBERRY, LUCY GARNER, and WILLIAM GARNER** <br>     **Defendants** | **Case No. 2:20-cv-02339** <br><br> **JUDGE:** <br> **NANNETTE JOLIVETTE BROWN** <br><br> **MAG. JUDGE:** <br> **DANA M. DOUGLAS** <br><br> **SECTION: G - 3** |

**SETTLEMENT AGREEMENT BETWEEN LOUISIANA FAIR HOUSING ACTION CENTER, INC., AND COMMCARE CORPORATION / THE FACILITY, AND COMMCARE MANAGEMENT CORPORATION**

WHEREAS, Plaintiff Louisiana Fair Housing Action Center ("LaFHAC" or "Plaintiff") filed a Second Amended Complaint on June 2, 2021, against CommCare Corporation/Greenbriar Community Care Center ("The Facility") and CommCare Management Corporation, et. al. (together, "Defendants");

WHEREAS, in the Second Amended Complaint, Plaintiff alleged, among other things, that Defendants discriminated against Plaintiff on the basis of disability in violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*., Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116; 42 U.S.C. § 18116, the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., and Louisiana law;

WHEREAS Plaintiff and Defendants identified herein (collectively, the "Parties") wish to amicably and finally resolve the claims raised by Plaintiff in the Second Amended Complaint, according to the terms set forth in this Settlement Agreement ("Agreement"), as a compromise to avoid the cost and uncertainty of litigation;

WHEREAS, Defendants have denied the allegations of wrongdoing and liability as set forth in the Second Amended Complaint, and by entering into this Agreement do not admit that they have engaged in any wrongdoing whatsoever as alleged in the Second Amended Complaint, nor should anything in this Agreement be construed as an admission of any wrongdoing or of any matter alleged in the Second Amended Complaint; and

WHEREAS, the Parties have voluntarily agreed to the terms of this Agreement and jointly request that it be so ordered by the Court, as indicated by the signatures appearing below;

IT IS HEREBY AGREED by and between the Parties that:

## I. TERM AND SCOPE OF AGREEMENT

1.      All monetary obligations under this Agreement, unless otherwise specified, shall commence (30) Thirty days after the date this Agreement is so ordered by the Court.

2.      All Parties agree to take the necessary steps to seek Court approval of this Agreement. All Parties agree that if any of the provisions stated within this Agreement are contrary to applicable law, the law will supersede. This Agreement shall be binding on the Parties and their owners, employees, agents, representatives, officers, heirs, assigns, or subsidiaries, unless otherwise specified.

## II. MONETARY RELIEF

4.      Defendant, CommCare Corporation, shall pay or cause to be paid to Plaintiff and its attorneys, Eisenberg & Baum, LLP ("E&B"): (1) the total sum of Eighty Thousand and 00/100

Dollars ($80,000.00). The aforementioned monetary relief (the "Settlement Amount") is in full and final settlement of all claims in Plaintiff's Second Amended Complaint including, but not limited to, any claims for damages, attorneys' fees, or costs against both CommCare Corporation/ the Facility and CommCare Management Corporation. The costs of all training contemplated in this Agreement are recognized to be included within the Settlement Amount as stated above. As a condition of receiving the Settlement Amount under this Agreement, Plaintiff and E&B are each required to deliver completed IRS Form W-9 to counsel for Defendants at the offices of Degan, Blanchard & Nash at 400 Poydras St. Suite 2600, New Orleans, LA. 70130.  The Settlement Amount shall be made as follows:

      (a) one check made payable to "Louisiana Fair Housing Action Center, Inc." in the amount of Forty-five thousand dollars ($ 45,000.00), which amount will be reported on an IRS Form 1099-MISC to be issued to Plaintiff; and

      (b) one check made payable to "Eisenberg & Baum, LLP as counsel for Louisiana Fair Housing Action Center, Inc." in the amount of Thirty-five thousand dollars ($ 35,000.00), apportioned as payment for attorneys' fees, which amount will be reported on IRS Forms 1099-MISC to be issued to both Plaintiff and Defendant's counsel.

      (c) Defendants shall deliver the payments described in Paragraph 4(a) and (b) to E&B located at 24 Union Square East, Penthouse, New York, New York 10003. Payment shall be made no later than thirty (30) days after the Court has so ordered this Settlement Agreement and filed same with the Clerk of the Court, provided that Defendants has received a completed IRS Form W-9 from Plaintiff and from E&B at least ten business days before such payment.

      5.      The Parties shall file a Stipulation and Order of Dismissal with the Court to dismiss the case if, and only, if the Settlement Amount is fully paid at the address specified in the preceding paragraph. Concurrent with the signing of this Agreement, the Parties shall execute, and Plaintiff shall file, said Stipulation and Order of Dismissal within fifteen (15) days of Defendants' payment of the Settlement Amount on the terms set forth above. Except as provided herein, both sides shall bear their own attorneys' fees and costs.

## III. TERMS OF THE AGREEMENT

6. The Facility, Greenbriar Community Care Center, and its employees shall not discriminate on the basis of disability in the admission of residents to the Facility, in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §3601 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. §794; Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557" or "ACA"), 42 U.S.C. §18116, the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12181 *et seq.*, and Louisiana law in any manner, including without limitation:

   (a) Refusing to admit prospective residents solely based upon the disability of being deaf and/or hard of hearing who are otherwise eligible for admission to the Facility;

   (b) Refusing to provide residents who are deaf or hard of hearing auxiliary services such as online American Sign Language ("ASL") interpreters when necessary for effective communication.

7. The Facility agrees to implement, to the extent it hasn't already done so, and continue the following policies, procedures and operations:

   (a) The Facility has created and adopted a "Providing Auxiliary Aids for Persons with Disabilities" Policy which includes provisions barring discrimination based on deafness.

   (b) For any deaf or hard of hearing resident identified during the comprehensive care plan process, the Facility will make a reasonable accommodation request for auxiliary services, and such request will be noted in the resident's file and the following shall occur:

      1) The Facility's employees will continue an interactive process with current residents in the form a comprehensive care plan to determine what auxiliary aids or services would be most appropriate, if any, and any such aids or services to be provided shall be documented in the resident's comprehensive care plan.

      2) The Facility does develop a comprehensive care plan for each resident.

      3) The comprehensive care plan addresses the communication needs of the resident regarding auxiliary services such as ASL.

    4) The comprehensive care plan will alert the staff that the resident is deaf or hard of hearing.

    5) The comprehensive care plan shall indicate the mode of communication provided to the deaf or hard of hearing resident.

    6) The comprehensive care plan will be reviewed and reassessed in accordance with 42. C.F.R 483.21 and during the reassessment, discussion regarding the provision of auxiliary aids and services will be addressed with the resident.

    7) The comprehensive care plan will reassess the resident's communication needs, in consultation with the resident, during the periodic treatment/service plan review.

8. The Website has been updated and:

    (a) Includes the international symbol for sign language interpretation.

    (b) Includes language that the Facility provides auxiliary aids and services when necessary to deaf and/or hard of hearing resident.

    (c) Includes language that the facility will comply with all applicable federal, state, and local anti-discrimination laws.

    (d) The Facility certifies that all of the aforementioned has been added to the website

9. Prior to the execution of this Agreement, the Parties agree that Facility's "Providing Auxiliary Aids for Persons with Disabilities" Policy" described by Paragraph 7(a) of this Agreement has been received by Plaintiff.

### IV. FAIR HOUSING TRAINING

10. Within 90 days of the execution of this Agreement, the Facility will conduct/facilitate the following training:

    (a) The term "employees" includes intake and admissions personnel, Administrator, DON, the admissions personnel, marketing personnel, Regional VP of Clinical Services ("administrative personnel"), and direct resident care responsibility staff ("direct resident care staff") for the Facility. The training shall be in the form as follows:

    (b) The administrative personnel shall participate in a training meeting via Zoom with the Plaintiff utilizing PowerPoint slides attached hereto as Exhibit A. This shall be scheduled for 90 minutes which will be coordinated through counsel. The Facility staff development nurse will also participate in this training.

(c) The staff development nurse will then coordinate a direct resident care staff training utilizing the 13-minute video **https://www.youtube.com/watch?v=FLPUWu3xyRY** with a handout of the PowerPoint presentation attached as Exhibit A. Upon completion of the PowerPoint and video training, each direct resident care staff will sign a certificate of completion. The Facility, Greenbriar will certify to Plaintiff that the training of the direct resident care staff has been completed and will also send a list of any questions asked by the direct resident care staff. Once Greenbriar receives the responses to questions back from your client, they will be disseminated to the "employees" which are the defined administration and direct resident care staff.

(d) LaFHAC affirms and agrees that nothing in the training materials shall contradict the Facility's standard operating procedures or the policies set forth in Paragraph 7 of this Agreement and further agrees that nothing in the training will conflict or be contrary to the laws of the State of Louisiana and that of the United States.

(e) LaFHAC has provided counsel for Defendants the Powerpoint as attached hereto as Exhibit A to be used for training and the link to the video to be used by Facility in training of its direct resident care staff.

## IV. EDUCATIONAL TRAINING

11. The Facility will ensure that the following current and new staff who are the Administrator, DON, the admissions personnel, marketing personnel, Regional VP of Clinical Services, and direct resident care responsibility staff have been instructed to read the "Providing Auxiliary Aids for Persons with Disabilities" Policy described in Paragraph 7(a) of this Agreement and are informed that online sign language interpreters may be provided as appropriate upon request for residents consistent with the terms of the "Providing Auxiliary Aids for Persons with Disabilities" Policy.

12. The Facility certifies that it also includes this training in its annual Compliance training.

## V. RECORDKEEPING PROVISIONS

13. The Facility certifies that it will maintain the following records for a period of 3 years from the execution of this Agreement:

(a) Certification that the Administrator, DON, admissions personnel, marketing personnel and Regional VP of Clinical Services and direct resident care responsibility staff have been provided with the "Providing Auxiliary Aids for

Persons with Disabilities" Policy described in this Agreement, and that the educational training set forth in Paragraph 11 has been provided.

(b) Records of written requests for auxiliary aids or services received from deaf or hearing-impaired residents, and documentation as to whether the request was honored, denied, or alternative aids were provided.

(c) Copies of any written complaints related to failure to provide auxiliary aids and services to residents who are deaf or hard of hearing.

(d) Copies of all written policies required by this Agreement.

(e) Supporting documentation concerning provision of auxiliary aids or services to residents (e.g., online interpreter or aid contracts, invoices, receipts, etc.).

(f) Copies of all written policies related to reasonable accommodations and auxiliary aids and services for deaf and/or hearing-impaired residents.

(g) Certification of the availability of information regarding reasonable accommodations, the Facility's compliance with applicable federal, state and local law, including but not limited to the FHA, and the international symbol for sign language interpretation, posters, signs, etc., for deaf or hard of hearing residents.

(h) Such signage will not be construed as a finding of liability under or applicability of the above-mentioned anti-discrimination laws.

14. The records described in Paragraph 13 will be maintained in electronic or paper form.

## VI. RELEASES

15. In exchange for the Facility's certification above, Plaintiff and its employees, agents, representatives, attorneys, officers, heirs, assigns, or subsidiaries, hereby release, acquit, and forever discharge with prejudice, CommCare Corporation, the Facility and CommCare Management Corporation and all employees, owners, shareholders, agents, trustees, board members, members, managers, other constituents, insurers, bond holders, attorneys, subsidiaries and affiliated entities from any and all liability, claims, or rights of action arising from the allegations in the Second Amended Complaint (including, but not limited to, claims for costs,

expenses, and attorneys' fees) and from any other liability concerning discrimination in admissions or care for prospective patients or patients who are deaf or hard of hearing.

## VII. JOINT DRAFTING

16.     This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

## VIII.  SEVERABILITY

17.     If any provision of this Agreement is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Agreement shall endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision shall materially affect the intent of this Agreement. The Parties to this Agreement shall consult and use their reasonable best efforts to agree upon a valid and enforceable provision that shall be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

## IV.  MISCELLANEOUS

18.     This Agreement contains all the terms and conditions agreed upon by the Parties hereto, and no oral agreement entered into at any time, nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein.

19.     The Parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that

they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

20. This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original. For purposes of executing this Agreement, a document signed and transmitted by facsimile or email shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**[Signature Pages Follow]**

LOUISIANA FAIR HOUSING
ACTION CENTER, INC.

By: _____
Cashauna Hill, Executive Director
Dated: November 1, 2022


CommCare Corporation

By: _____
Patricia M. Prechter, President & CEO
Dated: Nov. 2, 2022


CommCare Management Corporation

By: _____
James W. Tucker, President
Dated: Nov. 2, 2022


SO ORDERED

_____
United States District Judge