UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LOUISIANA FAIR HOUSING
ACTION CENTER, INC.,
                          *Plaintiff,*

    v.

PLANTATION MANAGEMENT
COMPANY, LLC, et al.,
                          *Defendants.*

Civ. No. 20-2339

Section G (3)

District Judge Nannette Jolivette Brown

Magistrate Judge Dana M. Douglas

## SETTLEMENT AGREEMENT

WHEREAS, Plaintiff Louisiana Fair Housing Action Center ("LaFHAC" or "Plaintiff") filed a Second Amended Complaint on June 2, 2021 against Plantation Management, LLC, St. Joseph of Harahan, LLC, Highpoint Healthcare LLC, Medico LLC which are owners and operators of the St. Joseph of Harahan assisted living facility located at 405 Folse Drive in Harahan, Louisiana.

WHEREAS, Plaintiff filed a Second Amended Complaint on June 2, 2021 against Metairie Operations, L.L.C., Jeremy Goux, and Timothy Goux, which are owners and operators of the Metairie Healthcare ███████ facility located at 6401 Riverside Drive in Metairie, Louisiana;

WHEREAS Plantation Management, LLC, St. Joseph of Harahan, LLC, Highpoint Healthcare LLC, Medico LLC Metairie Operations, L.L.C., Jeremy Goux, and Timothy Goux will be referred to herein collectively as ("Defendants");

WHEREAS the St. Josephs of Harahan facility and Metairie Healthcare Facility will be referred to herein collectively as ("Facilities");

WHEREAS, in the Second Amended Complaint, Plaintiff alleged, among other things, that Defendants discriminated against Plaintiff on the basis of disability in violation of the Fair Housing

1

16732\57218\2410409.v1

Act, 42 U.S.C. § 3601 *et seq.*, Section 504 of the Rehabilitation Act of 1973 , 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act, 42 USC § 18116; 42 U.S.C. § 18116, the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., and Louisiana law.

WHEREAS, Plaintiff and Defendants identified herein (collectively, the "Parties") wish to amicably and finally resolve the claims raised by Plaintiff in the Second Amended Complaint, according to the terms set forth in this Settlement Agreement ("Agreement"), as a compromise to avoid the cost and uncertainty of litigation;

WHEREAS, Defendants have denied the allegations of wrongdoing and liability as set forth in the Second Amended Complaint, and by entering into this Agreement do not admit that they have engaged in any wrongdoing whatsoever as alleged in the Second Amended Complaint, nor should anything in this Agreement be construed as an admission of any wrongdoing or of any matter alleged in the Second Amended Complaint; and

WHEREAS, the Parties have voluntarily agreed to the terms of this Agreement and jointly request that it be so ordered by the Court, as indicated by the signatures appearing below;

IT IS HEREBY AGREED by and between the Parties that:

## I.  TERM AND SCOPE OF AGREEMENT

1.      All equitable obligations under this Agreement shall commence thirty (30) days after the date this Agreement is so ordered by the Court and such equitable obligations shall continue for a period of three (3) years from that date.

2.      All Parties agree to take the necessary steps to seek Court approval of this Agreement. All Parties agree that if any of the provisions stated within this agreement are contrary to applicable law, the law will supersede. This Agreement shall be binding on the Parties and their

2

16732\57218\2410409.v1

owners, employees, agents, representatives, officers, heirs, assigns, or subsidiaries, unless otherwise specified.

## II.    MONETARY RELIEF

1.    Defendants shall pay or cause to be paid (to the extent not already paid) to Plaintiff and its attorneys, Eisenberg & Baum, LLP ("E&B"): (1) the total sum of Eighty Thousand Dollars ($80,000). The aforementioned monetary relief (the "Settlement Amount") is in full and final settlement of all claims in Plaintiff's Second Amended Complaint including, but not limited to, any claims for damages, attorneys' fees, or costs. The costs of all training contemplated in this Agreement are recognized to be included within the Settlement Amount as stated above. As a condition of receiving the Settlement Amount under this Agreement, Plaintiff and E&B are each required to deliver completed IRS Form W-9 to counsel for Defendants at Breazeale Sachse & Wilson, L.L.P., PO Box 3197, Baton Rouge, Louisiana. The Settlement Amount has been made as follows:

(a) two checks, each made payable to "Eisenberg & Baum, LLP - IOLA Trust Account" and each in the amount of Forty-~~Five~~ Thousand dollars ($40,000), which amount will be reported on IRS Forms 1099-MISC to be issued to both Plaintiff and Plaintiff's counsel. Plaintiff hereby acknowledges the receipt and sufficiency of the Settlement Amount.

(b) Defendants shall also pay the total cost of the mediation services utilized in this matter.

2.    Concurrent with the signing of this Agreement, the Parties shall execute, and Plaintiff shall file, said Stipulation and Order of Dismissal within fifteen (15) days of Defendants' payment of the Settlement Amount on the terms set forth above. Both sides shall bear their own attorneys' fees and costs.

16732\57218\2410409.v1

## III. GENERAL INJUNCTIVE RELIEF

1. Defendants and its employees and agents shall not discriminate against persons on the basis of disability in their admission of patients to the Facilities described herein, in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557" or "ACA"), 42 U.S.C. § 18116, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, and Louisiana law in any manner, including without limitation:

   (a) Refusing to admit prospective patients based upon the disability of being deaf and/or hard of hearing; and

   (b) Refusing to provide prospective patients who are deaf or hard of hearing auxiliary services such as American Sign Language ("ASL") interpreters when necessary for effective communication.

2. Defendants shall agree to implement the following changes to its policies, procedures and operations at the Facilities described herein:

   (a) The Facilities will adopt a "Communication with Deaf or Hard of Hearing Persons Accommodation Policy," which includes provisions barring discrimination based on disability.

   (b) The Facilities will create a "Deaf or Hard of Hearing Communication Request Form" to be utilized by prospective patients upon their admission to the Facilities which will allow said prospective patients to request auxiliary services relating to the deaf and hard of hearing such as ASL.

   (c) For any deaf individual making a reasonable accommodation request for auxiliary services, such request will be noted in the patient's file and the following shall occur:

      1. During the admission process, the Facilities' employees shall promptly evaluate the request and begin an interactive process to determine what auxiliary aids or services would be most appropriate, if any, and any such aids or services to be provided shall be documented in the patient's file (the "Communication Plan").

16732\57218\2410409.v1

2. Specific auxiliary aids or services available in different levels of care will likely be different, and the availability of such services will be discussed during the admission process.

3. During the admission process, the Facilities will develop a "Communication Plan". The Communication Plan will be created and made part of the treatment/service plan of those patients. The Communication Plan will be incorporated therein in accordance with the Facilities' standard operating procedures.

4. The Communication Plan will address the communication needs of the patient regarding auxiliary services such as ASL.

5. The Communication Plan will alert the staff that the prospective patient and/or companion is deaf or hard of hearing.

6. The Communication Plan shall indicate the mode of communication requested and provided to the deaf individual.

7. The Communication Plan will be reviewed and reassessed periodically because auxiliary aids needed to achieve effective communication may vary during the course of a patient's stay or a companion's visit.

8. The Communication Plan will be reassessed during the patient's periodic treatment/service plan review.

(d) In the event a patient declines interpretation assistance, the offer and refusal of interpreting services will be documented in the patient's records.

(e) Website Changes:

1. Include the international symbol for sign language interpretation.

2. State that the Facilities provide auxiliary aids and services when necessary to deaf and/or heard of hearing individuals.

3. Add statements that the Facilities comply with all applicable federal, state, and local anti-discrimination laws.

(f) Brochures and other materials:

1. The Facilities shall place a sign at the admissions area informing the public to inquire about any disability accommodations needed. The signage shall include the international symbol for sign language interpretation.

(g) The aforementioned changes shall be adopted within ninety (90) days of the Effective Date.

5

16732\57218\2410409.v1

3.      Prior to the execution of this Agreement, Plaintiff acknowledges that it has received copies of the "Communication with Deaf or Hard of Hearing Persons Accommodation Policy" described by Paragraph 8(a) of this Agreement," the "Deaf or Hard of Hearing Communication Request Form" described by Paragraph 8(b), and a form documenting the declination of interpretation assistance as described in Paragraph 8(d).

## IV. FAIR HOUSING TRAINING

1.      Over the three (3) year period of this Agreement, the Facilities will allow LaFHAC to provide materials for two (2) rounds of training to employees, subject to the following:

(a) the term "employees" includes intake and admissions personnel, and department heads supervising nursing, social services, admissions, recreation, and rehabilitation at the Facilities.

(b) Each round of training shall consist of four training sessions spread across two consecutive days. The trainings shall take place virtually or at the Facilities, with two trainings for each of the two days.

(c) Each training session shall not exceed one (1) hour in duration.

(d) The training will be primarily dedicated to legal issues concerning the deaf and hard of hearing but may also include sensitivity training regarding deaf and hard of hearing.

(e) The training will include comprehensive training regarding an entity's compliance with the FHA and all applicable anti-discrimination laws.

(f) LaFHAC affirms and agrees that nothing in the training materials shall contradict the Facilities' standard operating procedures or the policies set forth in Paragraph 8 of this Agreement and further agrees that nothing in the training will conflict or be contrary to the laws of the State of Louisiana and that of the United States.

(g) LaFHAC will, at the time of the above-mentioned written notice, provide counsel for Defendants with sample proposed training materials for the Facilities' advance review. In the event the Facilities object to any element of the training materials or training is inconsistent with the policies and procedures set forth in Paragraph 8 above, the Parties shall meet and confer in an effort to agree on the training materials and/or information to be provided in the training. Any dispute that cannot be resolved following such a meet and confer will be subject to the terms and requirements of Paragraph 17 below.

6

(h) The Facilities will, in good faith, consider the sample training materials and incorporate such materials as appropriate. The Facilities will provide the final training materials to LaFHAC prior to the training.

## V. EDUCATIONAL TRAINING

1.    In addition to the training, the Facilities will ensure that all current and new staff having the roles described in Paragraph 10(a) have been instructed to read the Communication with Deaf or Hard of Hearing Persons Accommodation Policy described in Paragraph 8(a) of this Agreement and are informed that sign language interpreters may be provided as appropriate upon request for patients, prospective patients, and their companions consistent with the terms of the Communication with Deaf or Hard of Hearing Persons Accommodation Policy.

## VI. RECORDKEEPING PROVISIONS

1.  The Facilities will maintain the following records throughout the term of this Agreement electronically or in paper form:

(a) Certification that employees have been provided with the Policy described in this Agreement, and that the training described has taken place.

(b) Records of written requests for auxiliary aids or services received from deaf and/or hearing-impaired individuals, and documentation as to whether the request was honored, denied, or alternative aids were provided.

(c) Copies of any written complaints related to failure to provide auxiliary aids and services to persons who are deaf or hard of hearing.

(d) Copies of all written policies and forms required by the Agreement.

(e) Supporting documentation concerning provision of auxiliary aids or services (e.g., interpreter or aid contracts, invoices, receipts, etc.).

(f) Copies of all written policies and forms related to reasonable accommodations and auxiliary aids and services for deaf and/or hearing-impaired individuals.

(g) Certification or photographs depicting the availability of information regarding reasonable accommodations, Defendants' compliance with applicable federal, state and local law, including but not limited to the FHA, and the international symbol for sign language interpretation, posters, signs, etc.

7

(h) Such signage will not be construed as a finding of liability under or applicability of the above-mentioned anti-discrimination laws.

(i) All general advertisements and marketing materials distributed or made available to the public during the term of the Decree.

2.    Plaintiff will initiate a consolidated record review whereas the records described in Paragraph 1 of this section will be maintained in one electronic or paper document. The document will include records for the Facilities described herein.

3.    Upon reasonable written notice, the Facilities will permit Plaintiff to inspect and copy the records described in Paragraph 1 of this section above no more than one time per calendar year during the term of this Agreement. The records contemplated to be reviewed by Plaintiff pursuant to Paragraph 1 of this section will not contain any personally identifiable patient information including but not limited to an individual's: (a) name; (b) social security number; (c) tax returns; (d) banking information; (e) credit reports; or (f) any records deemed a medical record or within the medical record filed of a patient. If any term of this paragraph, or any other term of this Agreement, conflicts with any federal or state law concerning the privacy of health information, the federal or state law shall govern and the conflicting term of this Agreement shall be set aside.

## VII. RELEASES

1.    In exchange for Defendants' agreement to the terms set forth in this Agreement, Plaintiff and its employees, agents, representatives, attorneys, officers, heirs, assigns, or subsidiaries, hereby release, acquit, and forever discharge with prejudice, and subject to the terms of this Agreement, Defendants and the Facilities listed herein and all employees, parents, owners, shareholders, agents, trustees, board members, other constituents, insurers, bond holders, attorneys, subsidiaries and affiliated entities from any and all liability, claims, or rights of action

16732\57218\2410409.v1

arising from the allegations in the Second Amended Complaint (including, but not limited to, claims for costs, expenses, and attorneys' fees) and from any other liability concerning discrimination in admissions or care for prospective patients or patients who are deaf or hard of hearing.

## VIII. ADMINISTRATION OF AGREEMENT

1.    The United States District Court for the Eastern District of Louisiana shall retain jurisdiction to enforce the terms of this Agreement upon the filing of an appropriate motion by either party, provided any moving party has fully complied with the notice and cure provision herein in Paragraph 17.

2.    It shall be a condition precedent to LaFHAC's or Defendants' right to seek judicial intervention on any alleged violation of this Settlement Agreement that LaFHAC or Defendants shall first have given the other party's counsel (currently, Breazeale Sachse & Wilson, LLP for Defendants, and Eisenberg & Baum, LLP for Plaintiff, but which may from time to time change upon notice to counsel for all other parties), written notice stating with specificity the alleged violation and the specific facts of the alleged breach of the Agreement (the "breach"). If a period of thirty (30) days from and after the giving of such written notice elapses without the breaching party having cured or remedied such breach to the mutual reasonable satisfaction of Plaintiff and Defendants during such thirty (30) day period, the moving party will only then be allowed to pursue judicial intervention. In the case of an alleged violation that cannot be cured within thirty (30) days, the period for remedy or cure shall be extended for a reasonable time (not to exceed an additional thirty (30) days), provided the moving party has made and continues to make a diligent effort to effect such a remedy or cure. Any claim of an incurable violation must be based upon

9                              16732\57218\2410409.v1

reasonableness and must be discussed by Plaintiff and Defendants in good faith before any party seeks judicial intervention.

3.      This Agreement shall be deemed to have been jointly drafted and no provision herein shall be interpreted or construed for or against any party because such party drafted or requested such provision, or this Agreement as a whole.

## IX. SEVERABILITY

1.  If any provision of this Agreement is declared invalid or unenforceable by a court having competent jurisdiction, it is mutually agreed that this Agreement shall endure except for the part declared invalid or unenforceable by order of such court, unless the elimination of the invalid provision shall materially affect the intent of this Agreement. The Parties to this Agreement shall consult and use their reasonable best efforts to agree upon a valid and enforceable provision that shall be a reasonable substitute for such invalid or unenforceable provision in light of the intent of this Agreement.

## X. MISCELLANEOUS

1.      This Agreement contains all the terms and conditions agreed upon by the Parties hereto, and no oral agreement entered into at any time nor any written agreement entered into prior to the execution of this Agreement regarding the subject matter of the instant proceeding shall be deemed to exist, or to bind the Parties hereto, or to vary the terms and conditions contained herein.

2.      The Parties expressly represent and warrant that they have full legal capacity to enter into this Agreement, that they have carefully read and fully understand this Agreement, that they have had the opportunity to review this Agreement with their attorneys and that they have executed this Agreement voluntarily, without duress, coercion, or undue influence.

16732\57218\2410409.v1

3. This Agreement may be executed in any number of counterparts and each such counterpart shall be deemed to be an original. For purposes of executing this Agreement, a document signed and transmitted by facsimile or email shall be treated as an original document and have the same binding legal effect as an original signature on an original document.

**LOUISIANA FAIR HOUSING ACTION CENTER, INC.**

By: Cashauna Hill, Executive Director
Dated: 11/07/2022

**Plantation Management, LLC,**

By: Scott H. Quirk
Dated: 12/1/22

**St. Joseph of Harahan, LLC**

By: Scott H. Quirk
Dated: 12/1/22

**Highpoint Healthcare LLC**

By: Scott H. Quirk
Dated: 12/1/22

Medico LLC Metairie Operations, L.L.C.,

16732\57218\2410409.v1

By: David Stallard
Dated: 12/1/22

**Jeremy Goux**

By: JEREMY GOUX
Dated: 0/21/2022

Metairie Operations, L.L.C.

By:
Jeremy Goux
Dated: 12 / 21 /2022

**Timothy Goux**

By:
Dated:

**SO ORDERED**

**United States District Judge**

16732\57218\2410409.v1

By: David Stallard
Dated: 12/1/22

Jeremy Goux

By: JEREMY GOUX
Dated: 0/21/2022

Metairie Operations, L.L.C.

By:_____
Jeremy Goux
Dated: 12/21/2022

Timothy Goux

By:_____
Dated: 12.22.2022

SO ORDERED

_____
United States District Judge

12

16732\57218\2410409.v1